**James J. REDD, Appellant,**

v.

**Penny E. REDD, Appellee.**

**No. 79A05–0804–CV–212.**

Court of Appeals of Indiana.

Feb. 19, 2009.

Thomas N. Logan, Sean M. Persin, Withered Burns & Persin, LLP, Lafayette, IN, Attorneys for Appellant.

Daniel J. Moore, Laszynski & Moore, Lafayette, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

James ("Father") and Penny ("Mother") Redd's marriage was dissolved in Tippecanoe Superior Court. This appeal arises out of the court's adjudication of Father and Mother's various petitions to modify child support and petitions for educational expenses. Father has presented several issues on appeal, which we restate as:

I.  Whether J.R. was emancipated on his eighteenth birthday;

II.  Whether J.R. repudiated the parent-child relationship with Mother;

III.  Whether the court abused its discretion when it ordered Father to pay thirty-two percent of K.R.'s secondary education expenses; and,

IV.  Whether the trial court abused its discretion when it ordered Father to pay $1000 of Mother's attorney fees.

We affirm in part, reverse in part and remand for proceedings consistent with this opinion.

### Facts and Procedural History

Mother and Father's marriage was dissolved in 2007. The parties have five children. Two of the children are primarily involved in the issues presented in this appeal: the oldest child, J.R., and the second-oldest child, K.R. On the date the marriage was dissolved all five children resided with Mother in Fort Belvoir, Virginia. Mother is employed by the military and Father is employed by the West Lafayette Fire Department. Mother's income is approximately twice that of Father's.

The three youngest children attend a Catholic elementary school and the parties share the cost of that schooling. K.R. attends a Catholic high school at a cost of approximately $10,000 per school year. K.R. is not thriving academically at that school. Mother desires that he continue to attend the school with Father contributing towards those expenses. Father does not believe he is financially able to do so.

J.R. began to reside with Father at some time prior to September 2006, when he quit high school. After the court issued the dissolution decree in early 2007, J.R. resided with Mother in Virginia for approximately five months, but he refused to enroll in school. He returned to Father's residence in Indiana at the end of May 2007. J.R. obtained his GED and graduated from the Indiana National Guard Youth Challenge Program on December 8, 2007, his eighteenth birthday. He then moved back to Lafayette to reside with Father. He also enrolled in Ivy Tech Community College.

One week after J.R.'s eighteenth birthday, Father filed a petition to modify child support. In response, Mother argued that the court should find that J.R. is emanci-

pated, and she renewed her petition for K.R.'s secondary education expenses. On February 8, 2008, Father filed a request for payment of J.R.'s post-secondary education expenses.

After hearings were held on the parties' various petitions, on March 14, 2008, the trial court issued findings of fact and conclusions of law. The court found both that J.R. was emancipated and that he had repudiated the parent-child relationship with Mother. The court also ordered Father to pay $226 per week to Mother in child support for the remaining four children. The court granted Mother's request for education expenses and ordered Father to pay thirty-two percent of K.R.'s high school tuition. Finally, Father was ordered to pay $1000 of Wife's attorney fees. Father now appeals.

### Discussion and Decision

### Standard of Review

■ The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Therefore, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Staresnick v. Staresnick,* 830 N.E.2d 127, 131 (Ind.Ct.App.2005). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Id.* Moreover, we generally give "considerable deference to the findings of the trial court in family law matters" recognizing that the trial court is in the "best position to judge the facts, ... to

get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to assess." *MacLafferty v. MacLafferty,* 829 N.E.2d 938, 940 (Ind.2005).

■ Finally, we note that the trial court adopted Mother's proposed findings of fact and conclusions of law verbatim. "Although wholesale adoption is not prohibited, we do not encourage trial courts to engage in this practice." *Id.* "[T]his practice weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Safety Nat'l Cas. Co. v. Cinergy Corp.,* 829 N.E.2d 986, 993 n. 6 (Ind.Ct.App.2005), *trans. denied.*

### I. Emancipation

■ First, Father argues that the trial court erroneously found that J.R. was emancipated on his eighteenth birthday. A parent's child support obligation terminates when a child is emancipated or reaches age twenty-one, except in certain circumstances, such as the incapacity of the child. *Lea v. Lea,* 691 N.E.2d 1214, 1215 (Ind.1998). "What constitutes emancipation is a question of law, while whether an emancipation has occurred is a question of fact." *Dunson v. Dunson,* 769 N.E.2d 1120, 1123 (Ind.2002) (citation omitted). Courts may not presume emancipation. *Id.* Rather, it "must be established by competent evidence by the party seeking emancipation." *Id.*

Pursuant to Indiana Code section 31–16–6–6 (2008):

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.

\* \* \*

(3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary school or postsecondary educational institution for the prior four (4) months and is not enrolled in a secondary school or postsecondary educational institution; and

(C) is or is capable of supporting himself or herself through employment.

In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

(1) has joined the United States armed services;

(2) has married; or

(3) is not under the care or control of:

(A) either parent; or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

■■ It is well-settled that "emancipation requires that (1) the child initiate the action putting itself outside the parents' control and (2) the child in fact be self-supporting." *Dunson*, 769 N.E.2d at 1123–24 ("[S]ubsection (b)(3) requires that the child must *in fact* be supporting itself to be emancipated. The idea that children must be supporting themselves to be emancipated has been a part of Indiana case law since at least 1952.") (emphasis added). Moreover, " '[t]o determine whether a child has placed herself beyond the control, custody and care of either parent, we consider whether the child is in fact supporting [himself] without the assistance of her parents.' " *Id.* at 1125 (quoting *Quillen v. Quillen*, 671 N.E.2d 98, 100 (Ind.1996)). Finally, section 31–16–6–6(a) "does not deal with 'emancipation' of a child; it merely identifies the circumstances under which our legislature has determined a parent's obligation to pay child support should terminate." *Carpenter v. Carpenter*, 891 N.E.2d 587, 593 (Ind. Ct.App.2008).

In this case, J.R. has not joined the military and is unmarried; therefore, we consider whether he is "under the care or control of [ ] either parent." J.R. resides with Father and no evidence presented establishes that J.R. is supporting himself. Accordingly, we conclude that the trial court's finding that J.R. is emancipated is not supported by the evidence.

## II. Repudiation

■■ Next, Father argues that the trial court erroneously found that J.R. repudiated the parent-child relationship with Mother. "Repudiation of a parent is 'a complete refusal to participate in a relationship with his or her parent.' " *Norris v. Pethe*, 833 N.E.2d 1024, 1033 (Ind.Ct. App.2005). Under certain circumstances,

repudiation will obviate a parent's obligation to pay certain expenses for the child, including college expenses. *Id.* "[W]here a child, as an adult over eighteen years of age, repudiates a parent, that parent must be allowed to dictate what effect this will have on his or her contribution to college expenses for that child." *McKay v. McKay,* 644 N.E.2d 164, 166 (Ind.Ct.App.1994) (citation omitted). Moreover,

> adult children who willfully abandon a parent must be deemed to have run the risk that such a parent may not be willing to underwrite their educational pursuits. Such children, when faced with the answer 'no' to their requests, may decide to seek the funds elsewhere; some may decide that the time is ripe for reconciliation. They will not, in any event, be allowed to enlist the aid of the court in compelling that parent to support their educational efforts unless and until they demonstrate a minimum amount of respect and consideration for that parent.

*Id.* at 167 (quotation omitted).

In *Norris,* the child rejected and returned father's birthday gifts and communicated with her father only to tell him that she did not desire to have a relationship with him. When the father attended the child's cheerleading event, she demanded that he leave. The father also attended the child's high school graduation against her wishes. During a counseling session, the child stated that she would not visit her father if he were in the hospital dying. Because the child rejected all of the father's attempts to have a relationship with her, we concluded that the evidence supported the trial court's finding that the child had repudiated her relationship with her father. 833 N.E.2d at 1034–35.

In *McKay,* the father voluntarily relinquished his visitation rights with his child after the parent-child relationship deteriorated. Although father did not exercise visitation with the child at issue in the appeal, he did sporadically send cards and gifts. Several years later, the father attempted a reconciliation with the child. After the child rejected his attempts, father filed a petition to enforce his visitation rights. As a result of that petition, the court ordered father and the child to participate in counseling, but even after counseling, the child refused to visit or have a relationship with the father. The child informed the court that he considered his mother and stepfather as his parents. The trial court eventually ordered the father to pay a portion of the child's college expenses, and on appeal, we reversed after concluding that the child had repudiated the parent-child relationship. 644 N.E.2d at 168.

Repudiation of the parent-child relationship was not found in *Staresnick v. Staresnick,* 830 N.E.2d 127 (Ind.Ct.App.2005). In that case, the trial court found that the child and father had a poor relationship with poor communication, and the child attempted to initiate contact with the father on several occasions. The child also indicated his desire to have a relationship with his father and his willingness to attend counseling. However, the child did not consult with his father in making decisions regarding college and did not provide his college address to his father. He also had only two telephone conversations with his father in two years and admitted that he told his father on more than one occasion that he did not respect him and did not want to see him anymore. The trial court concluded that the child had not repudiated the father, and, on appeal, our court affirmed because the child indicated that he would like to rebuild his relationship with his father. *Id.* at 132–33.

With regard to repudiation, the trial court in this case noted that while residing with Mother, J.R.'s "behavior toward [Mother] was deplorable and included defiance, physical threats, open scorn and repudiation of her authority as a mother." Appellant's App. p. 12. While Father does not dispute this finding, Father correctly notes that rudeness and insolence alone do not support the conclusion that a child has repudiated the parent-child relationship. From the case law discussed above, we conclude that repudiation occurs only when the child completely rejects a relationship with the parent in question.

The trial court interviewed J.R. in camera during the hearing. The court made the following statements about its interview with J.R.:

> [W]e're dealing with a ... kid who is kind of clueless and not aware of how much of what he does is hurtful and isn't really aware of how much out of control he gets when he's out of control and doesn't really -as most people who have problems are in denial about the facts that he has problems.... And if you're not aware that he has problems then maybe you're in denial too and how do we get past that. He doesn't want to cut off all together. He thinks he's made [it] up with you.

Tr. p. 104.

Mother testified that she attended J.R.'s graduation from the National Guard program with several members of her family. J.R. also attended the graduation party Mother's family had for him. Mother also spoke with J.R. on the phone when he would answer. J.R. has stated to both Mother and Father that he wants to have a relationship with Mother. Tr. pp. 28–29, 48, 50–51.

However, in addition to his threats toward Mother, J.R. has also stated that he hates her, "wants nothing more to do with" her, and never wants to see her again. Tr. p. 54. But, despite these statements, J.R. called Mother the night before the hearing and asked if he could see her. Tr. p. 91. Mother testified that J.R. "came in like nothing had happened" and Mother discussed his behavior with him. Id. Mother was surprised that J.R. wanted to see her, but testified that after their meeting, she does not think that she will never talk to J.R. again. Tr. pp. 91–92.

From this evidence, we cannot conclude that J.R. has repudiated his relationship with his Mother. While we certainly do not condone J.R.'s deplorable behavior, J.R. has not completely rejected a relationship with his Mother. Accordingly, we conclude that the trial court's finding concerning repudiation is not supported by the evidence.

### III. K.R.'s Educational Expenses

Third, Father argues that the trial court abused its discretion when it ordered him to pay thirty-two percent of K.R.'s secondary educational expenses. Indiana Code section 31–16–6–2 provides that an educational support order may include, where appropriate, amounts for a child's education in elementary and secondary schools. That section requires consideration of the child's aptitude and ability, the child's reasonable ability to contribute to education expenses through work, loans, and other sources of financial aid reasonably available to the child and each parent, and the ability of each parent to meet the expenses.

A trial court weighing a request for payment of private elementary and secondary school expenses also must consider Indiana Child Support Guideline 6 and its "Extraordinary Educational Expenses" commentary. See Sims v. Sims, 770 N.E.2d 860, 864 (Ind.Ct.App.2002) ("in awarding any amount of extraordinary ed-

ucational expenses, a trial court's discretion is to be exercised in a way consistent with the Guidelines."). That commentary provides:

> Extraordinary education expenses may be for elementary, secondary or post-secondary education, and should be limited to reasonable and necessary expenses for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child.
>
> a. Elementary and Secondary Education. If the expenses are related to elementary or secondary education, the court may want to consider whether the expense is the result of a personal preference of one parent or whether both parents concur; if the parties would have incurred the expense while the family was intact; and whether or not education of the same or higher quality is available at less cost.

Ind. Child Support Guideline 6.

Father argues that he does not have the financial ability to pay for K.R.'s Catholic high school education. The tuition at K.R.'s high school is $9800 per year and Father was ordered to pay thirty-two percent of that, or $3136. Father, a firefighter, makes approximately $50,000 annually. The trial court made the following finding with regard to Father's current financial situation:

> [A]s a part of the Dissolution Decree each party took marital debt on a ratio of income basis, wherein the Former Wife assumed seventy percent (70%) of the same and the Former Husband assumed thirty percent (30%) of the same. The portion the Former Wife assumed was approximately Forty Thousand and 00/100 Dollars ($40,000.00) and the Former Wife continues to pay her share of the marital debt. The Former Husband no longer pays his share of the marital debt. Previously he had monthly payments on the first and second mortgage on what was the marital residence. Said residence has been sold. The Former Husband was also to pay credit card debt and he has discharged that credit card debt in bankruptcy that was filed at the time of the hearing in this cause. The Former Husband's residences since January 24, 2007 has [sic] consisted of the former marital residence, where he didn't make the mortgage payments, his current wife's residence, and presently at his mother's residence. This reduction in the Former Husband's living expenses together with a discharge of debts through bankruptcy constitutes a change of circumstances justifying the granting of the Former Wife's Petition for education expenses.

Appellant's App. p. 14.

At the hearing, Father testified that even after the discharge of his credit card debt in bankruptcy he only has $13 left after he pays his monthly expenses. It appears the trial court did not credit this testimony in light of the fact that Father did not testify as to what those monthly expenses were aside from basic necessities of utilities, gas, food and clothing. Father resides with his mother and new wife, and did not provide any evidence of either current mortgage or rent payments. Moreover, most of his debt was discharged in bankruptcy.[1] Given his annual salary of nearly $50,000, we cannot conclude that the trial court abused its discretion when it ordered him to pay thirty-two percent (or

---

1. Father did state that he did not have the Chase credit card debt discharged in bankruptcy and Father pays $300 a month on that obligation. Tr. p. 35.

$3136) of K.R.'s high school tuition.[2] His argument to the contrary is merely a request to reweigh the evidence and the credibility of the witnesses.

### IV. Attorney Fees

Finally, Father argues that the trial court abused its discretion when it ordered him to pay $1000 of Wife's attorney fees. Pursuant to Indiana Code section 31–16–11–1, a trial court has broad discretion to impose attorney fees on either party. *Thompson v. Thompson,* 868 N.E.2d 862, 870 (Ind.Ct.App.2007). Reversal is warranted only when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

> The trial court may consider the resources of the parties, the financial earning ability of the parties, and "any other factors that bear on the reasonableness of the award." The trial court, may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated.

*Id.* (citations omitted).

Father argues that the court "improperly awarded attorney fees because [Father] makes substantially less income than [Mother]." Appellant's Br. at 15. He notes that Mother's salary is double that of Father's. However, the trial court heard evidence that while most of Father's marital debt was discharged in bankruptcy, Mother continues to pay her share of the marital debt. Mother also bears sixty-eight percent of the expense of the four youngest children's Catholic education. Although Father claimed that his monthly expenses are equal to his monthly income, Father's testimony establishes that his

only monthly expenses are food, gas, clothing, and utilities. Father did not present any evidence of rent or mortgage payments. Finally, there was evidence from which a reasonable inference could be made that Father has encouraged J.R.'s behavior towards Mother. For all of these reasons, the trial court did not abuse its discretion when it ordered Father to pay $1000 of Mother's attorney fees.

### Conclusion

Because we conclude that the trial court erred when it found that J.R. was emancipated and has repudiated the parent-child relationship with Mother, we remand this case to the trial court to consider whether Mother should be required to contribute towards J.R.'s post-secondary educational expenses. However, the trial court did not err when it ordered Father to pay thirty-two percent of K.R.'s high school tuition and pay $1000 of Mother's attorney fees.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BAILEY, J., and BARNES, J., concur.

---

**2.** Further, we note that Father paid $1,135.60 of J.R.'s Ivy Tech tuition and purchased a

used car for him.