FILED
Feb 26 2013, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court



## FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KEVIN L. LIKES**
Likes Law Office
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**JEREMY N. GAYED**
**MARK H. BAINS**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CURVES FOR WOMEN ANGOLA | ) | |
| An Indiana Partnership, DAN COLE, | ) | |
| And LORI COLE, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | No. 76A04-1206-PL-312 |
| vs. | ) | |
| | ) | |
| FLYING CAT, LLC, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STEUBEN CIRCUIT COURT
The Honorable Allen N. Wheat, Judge
Cause No. 76C01-1003-PL-129

**February 26, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Dan Cole ("Dan") appeals the judgment of the Steuben Circuit Court in favor of Flying Cat, LLC ("Flying Cat"), in Flying Cat's breach-of-contract claim against Dan and his ex-wife Lori Atkison f/k/a Lori Cole ("Lori") arising out of a lease agreement between the Coles and Flying Cat for the operation of a business owned and operated by the Coles. On appeal, Dan presents three issues, which we consolidate and restate as: (1) whether the trial court clearly erred in finding that Dan and Lori were in a business partnership, and (2) whether the trial court clearly erred in finding that a lease extension signed by Lori could bind Dan and make him liable for a breach of the lease.

We affirm.

**Facts and Procedural History**

On December 5, 2001, Dan and his then-wife Lori entered into a Franchise Agreement with Curves International, Inc., so that they could operate a Curves exercise facility in Angola, Indiana. Dan and Lori each signed the Franchise Agreement individually as a "Franchisee." Appellee's App. p. 35. An affirmation clause in the Franchise Agreement provided:

> We the undersigned principals of the corporate or partnership franchisee, do as individuals jointly and severally, with the corporation or partnership and amongst ourselves, accept and agree to all of the provisions, covenants and conditions of this agreement[.]

Id. at 36. Although the Franchise Agreement did not specify which type of entity the Coles would be operating their franchise under, the Coles never incorporated their Curves franchise, which did business as Curves for Women of Angola ("Curves of Angola").

At approximately the same time, the Coles negotiated with Rosalie Dellinger, the predecessor in interest to Flying Cat ("the Landlord"), to lease space in Angola to operate

2

Curves of Angola, with Dan acting as the principal negotiator of the terms of the lease. As a result of these negotiations, the Coles executed a commercial lease ("the Lease") with the Landlord on December 11, 2001. Both Dan and Lori signed the Lease in the capacity of "Owner." Appellant's App. p. 55. Dan then made an initial payment of six months of rent to secure the Lease. The Lease was for an initial term of three years, with an option for two additional terms of three years.

After the Lease was executed, Lori managed the day-to-day operations of Curves of Angola, and Dan handled the accounting responsibilities and maintenance of the equipment. Dan and Lori operated Curves of Angola for profit and treated the profits of the business as marital property that they were both entitled to use.

On September 7, 2004, the Coles exercised the option for the first three-year extension to the Lease. The timing of this extension did not technically comply with the provisions of the original Lease, which required a sixth-month notice of the extension. However, the Landlord overlooked this deficiency and agreed to the extension. Both Dan and Lori signed the letter memorializing the extension agreement. Appellant's App. p. 58.

Almost one year later, in July 2005, Dan and Lori separated, but they made several attempts at reconciliation. During one of these periods of reconciliation, Dan and Lori entered into another franchise agreement to operate another Curves franchise in Ohio. However, on May 4, 2007, Lori filed a petition for dissolution of her marriage with Dan. By the end of 2007, the Coles were in default under the terms of the Lease in an amount of $21,641.55.

Despite this default, on January 1, 2008, Lori and the Landlord executed the second option to renew the Lease. This second extension, like the first, was memorialized on behalf of "Curves for Women of Angola." Appellant's App. p. 59. Although Dan did not sign the renewal petition, neither he nor Lori informed the Landlord of the pending divorce. Nor did Dan otherwise inform the Landlord that he was no longer in a partnership with Lori. Thus, the Landlord believed that Lori was signing on behalf of both her and Dan as a partnership. And a representative of Flying Cat explained at trial that it routinely allows fewer than all partners to sign lease agreements on behalf of a partnership.

In August 2008, Curves had still not paid its overdue rental obligations. The Landlord presented Lori with a repayment schedule under which Curves of Angola could repay its back rent over time. Curves of Angola then repaid a small amount of its overdue rent, but soon fell behind again, and by the end of the term of the second extension in 2010, it was behind in rent and maintenance fees in the amount of $44,647.39. In 2011, Lori decided to sell Curves of Angola. Dan, as a franchisee under the Franchise Agreement, signed an "intent to sell" document authorizing the sale of the Curves for Angola franchise.

In the meantime, on March 2, 2010, Flying Cat had filed suit against the Coles, seeking damages for the unpaid rental and maintenance fees. Dan filed an answer, but Flying Cat obtained a default judgment against Lori and Curves of Angola in the amount of $49,945.03. On October 21, 2010, the trial court entered partial summary judgment in favor of Flying Cat and against Dan for the amounts due and unpaid under the Lease

4

through December 31, 2007. At a bench trial held on May 1, 2012, the issue was whether Dan was liable for the amounts due and unpaid under the Lease through December 31, 2010. On May 21, 2012, the trial court entered findings of fact and conclusions of law in favor of Flying Cat. Dan now appeals.

## Standard of Review

The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). We therefore apply a two-tiered standard of review: we first determine whether the evidence supports the trial court's findings, and second we determine whether the trial court's findings support the judgment. Anderson v. Ivy, 955 N.E.2d 795, 800 (Ind. Ct. App. 2011), trans. denied. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., if the record contains no facts or inferences supporting them. Redd v. Redd, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009). The party appealing the trial court's judgment must establish that the findings are clearly erroneous. Anderson, 955 N.E.2d at 800. The trial court's findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. Id. In reviewing the trial court's findings, we neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Redd, 901 N.E.2d at 549. We do not, however, defer to the trial court's conclusions of law, which we review de novo. Anderson, 955 N.E.2d at 800; Redd, 901 N.E.2d at 549.

5

## I. The Existence of a Partnership

Dan first claims that the trial court erred in concluding that he and Lori were in a partnership when they established Curves of Angola. "A partnership is an association of two (2) or more persons to carry on as co-owners a business for profit and includes for all purposes of the laws of this state a limited liability partnership." Ind. Code § 23-4-1-6(1). The existence of a partnership is generally a question of fact. Copenhaver v. Lister, 852 N.E.2d 50, 58 (Ind. Ct. App. 2006).

For a partnership to exist, the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits. Id. at 58-59. Put another way, to establish a partnership relation between parties there must be: (1) a voluntary contract of association for the purpose of sharing profits and losses, which may arise from the use of capital, labor, or skill in a common enterprise; and (2) an intention on the part of the parties to form a partnership. Id. at 59. The intention that controls in determining the existence of a relationship is "the legal intention deducible from the acts of the parties." See id. Thus, the intention to form a partnership must be determined by examining all the facts of the case, and the conduct of the parties reveals their true intentions and the construction they placed upon their own agreement. Id.

Indiana Code section 23-4-1-7 sets forth rules for determining whether a partnership exists, specifically:

(1) Except as provided by section 16[1] of this chapter, persons who are not partners as to each other are not partners as to third persons.

---

[1] Indiana Code section 23-4-1-16 governs partnership by estoppel.

6

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(4) *The receipt by a person of a share of the profits of a business is prima facie evidence that the person is a partner in the business*, but no such inference shall be drawn if such profits were received in payment for the following:

    (a) As a debt by installments or otherwise.

    (b) As wages of an employee or rent to a landlord.

    (c) As an annuity to a widow or representative of a deceased partner.

    (d) As interest on a loan though the amount of payment varies with the profits of the business.

    (e) As the consideration for the sale of a goodwill of a business or other property by installments or otherwise.

(5) The existence of a partnership is not affected by the following:

    (a) The filing or failure or omission to file an original or renewal registration as a limited liability partnership under section 45 of this chapter.

    (b) The expiration of a partnership's status as a limited liability partnership.

    (c) The filing of a notice of withdrawal under section 45 of this chapter.

(emphasis added).

Dan claims that the trial court clearly erred in finding that he and Lori were in a partnership because they did not share profits. In so doing, he refers to evidence that does not favor the trial court's findings, a reference we are not permitted to make on appeal. See Redd, 901 N.E.2d at 549. Dan also notes that it was Lori who ran Curves of Angola on a day-to-day basis. However, the lack of daily involvement by one party is not *per se* indicative of an absence of a partnership. J.M. Schultz Seed Co. v. Robertson,

7

451 N.E.2d 62, 64 (Ind. Ct. App. 1983). And there was evidence that Dan did participate in the Curves business by discharging the responsibility for maintenance and accounting.

Dan also claims that he and Lori did not share profits "under any set formula[.]" Appellant's Br. p. 11. But there is no requirement in Indiana Code section 23-4-1-7(4) that the profits be shared under any specific formula. Instead, there was evidence that both Lori and Dan shared in the profits as a general marital asset and that such profits were used for their common benefit by being spent on items such as joint vacations and household appliances.

Still, Dan claims, without citation to authority, that a partnership cannot be found based solely on a "community of interest." Appellant's Br. p. 11. Indiana Code section 23-4-1-7(2) does provide that "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not *of itself* establish a partnership, whether such co-owners do or do not share any profits made by the use of the property." But in Copenhaver, we specifically noted that, for a partnership to exist, the parties must have joined together to carry on a trade for their common benefit, each contributing property or services, and having *a community of interest in the profits*. Id. at 58-59 (emphasis added). And here, there was more than simple, joint ownership of the property.

Dan and Lori signed the Franchise Agreement, which referred to the signers as "principals of the corporate or partnership franchisee." Appellant's App. p. 36. Dan and Lori signed the initial Lease as "owners." Id. at 7, 55. Dan also paid the first six months of rent for the Curves business. Dan provided maintenance and accounting services for

8

Curves of Angola, and he shared in the profits of the business. From this evidence, the trial court could reasonably find that Dan and Lori operated Curves of Angola as a partnership.

## II. Liability Under Lease Extensions

Dan next argues that, even if he had been in a partnership with Lori to operate the Curves franchise, his liability should be limited to the terms of the initial Lease, and to the lease extension that Dan signed, but not extended to the subsequent lease extension signed by Lori alone. Thus, Dan claims that the trial court erred in holding him liable for any damages after the end of the term of the first lease extension, i.e. December 31, 2007.

The trial court specifically found that Dan and Lori's partnership was dissolved on May 4, 2007, when Lori filed for divorce. See Appellant's App. p. 12 ("By filing the divorce petition on May 4, 2007, Lori clearly manifested her intention that her personal and business relationship with [Dan] had come to an end."). Still, the trial court rejected Dan's argument that he could not be held liable for Lori's act of signing the subsequent lease extension on January 1, 2008, after the dissolution of the partnership.

The trial court correctly noted that, under certain circumstances, a partner can still bind the partnership even after a partnership has been dissolved. Indiana Code section 23-4-1-35 provides:

(1) After dissolution a partner can bind the partnership except as provided in paragraph (3):
   (a) By any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution.
   (b) *By any transaction which would bind the partnership if dissolution had not taken place, provided the other party to the transaction:*
      (I) had extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution; or

9

(II) *though he had not so extended credit, had nevertheless known of the partnership prior to dissolution, and, having no knowledge or notice of dissolution, the fact of dissolution had not been advertised in a newspaper of general circulation in the place (or in each place if more than one) at which the partnership business was regularly carried on.*

(2) The liability of a partner under paragraph (1)(b) shall be satisfied out of partnership assets alone when such partner had been prior to dissolution:

(a) unknown as a partner to the person with whom the contract is made; and

(b) so far unknown and inactive in partnership affairs that the business reputation of the partnership could not be said to have been in any degree due to his connection with it.

(3) The partnership is in no case bound by any act of a partner after dissolution:

(a) where the partnership is dissolved because it is unlawful to carry on the business, unless the act is appropriate for winding up partnership affairs; or

(b) where the partner has become bankrupt; or

(c) where the partner has no authority to wind up partnership affairs; except by a transaction with one who:

(I) had an extended credit to the partnership prior to dissolution and had no knowledge or notice of his want of authority; or

(II) had not extended credit to the partnership prior to dissolution, and, having no knowledge or notice of his want of authority, the fact of his want of authority has not been advertised in the manner provided for advertising the fact of dissolution in paragraph (1)(b)(II).

(4) Nothing in this section shall affect the liability under section 16 of this chapter of any person who after dissolution represents himself or consents to another representing him as a partner in a partnership engaged in carrying on business.

I.C. § 23-4-1-35 (emphasis added).

As the emphasized portion of this statute explains, even after a partnership has been dissolved, a partner may still bind the partnership by engaging in a transaction that would bind the partnership had it not been dissolved, if the other party to the transaction

10

had known of the partnership prior to dissolution but had no knowledge or notice of the dissolution because "the fact of dissolution had not been advertised in a newspaper of general circulation in the place (or in each place if more than one) at which the partnership business was regularly carried on."  I.C. § 23-4-3-35(1)(b)(II).

Here, Lori's execution of the second lease extension was continuing the business affairs of Curves of Angola and her execution of the second lease was done with authority that would have bound the partnership had it not been dissolved.  See Life v. F.C. Tucker Co., Inc., 948 N.E.2d 346, 351 (Ind. Ct. App. 2011) (noting the well-settled rule that partners are bound by the contracts of each other when made in the scope of the firm's business).  Nor did Dan ever inform Lori that she could not sign the second extension.  Further, Dan and Lori held themselves out to the Landlord as partners operating Curves of Angola, and the Landlord had no notice of the dissolution until after Lori signed the second extension, because the fact of the dissolution had not been advertised in an appropriate newspaper and the record shows no other, actual knowledge by the Landlord.

Thus, the facts of this case fall precisely within the scope of Indiana Code section 23-4-1-35(1)(b)(II), and Lori could still act to bind Dan despite the fact that the partnership had been dissolved.  And Dan admits that all partners are jointly and severally liable for everything chargeable to the partnership and jointly for all other debts

11

and obligations of the partnership.[2]  See Ind. Code § 23-4-1-15(1).  Therefore, the trial court did not clearly err in determining that Dan was liable for the amounts incurred under the second lease extension even though it was signed only by Lori.

### Conclusion

The trial court did not clearly err in finding that Dan and Lori were in a partnership to operate Curves of Angola.  Nor did the trial court clearly err in concluding that Dan was liable for damages under the second lease extension that was signed by Lori.

Affirmed.

KIRSCH, J., and CRONE, J., concur.

---

[2] Dan also claims that he cannot be held liable for Lori's act of signing the second lease extension because the second lease extension materially altered the terms of the first lease and the first lease extension, that he did sign.  However, Lori, as a partner, had the authority to enter into contracts and bind the partnership on her own.  Again, it is well settled that partners are bound by the contracts of each other when made in the scope of the firm's business.  Life, 948 N.E.2d at 351.  The fact that the second lease extension Lori signed was different than the lease and extension signed by Dan is irrelevant to the fact that Lori still had authority to bind the partnership.