**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 18 2014, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JAMES F. BLEEKE**
**CAROL A. DILLON**
**RACHEL A. EAST**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JOHN J. SULLIVAN**
**NATHAN MILLER**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| INDIANA COMMISSIONER OF INSURANCE STEPHEN W. ROBERTSON, on behalf of INDIANA PATIENT'S COMPENSATION FUND, | ) ) ) ) ) | |
| Apellant-Respondent, | ) ) | |
| vs. | ) ) | No. 49A04-1401-CT-7 |
| KIMI CLARK, Personal Representative of the Estate of William Troy Clark, Deceased | ) ) ) | |
| Appellees-Claimant. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John F. Hanley, Judge
Cause No. 49D11-1205-CT-018199

**July 18, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

The Indiana Patient's Compensation Fund ("the Fund") appeals the Marion Superior Court's award of damages to the estate of William Troy Clark ("the Estate") following remand. The Fund presents two issues on appeal, which we restate as: (1) whether the trial court exceeded its authority on remand and (2) whether the trial court clearly erred in its award of damages for lost earnings.

We affirm.

**Facts and Procedural History**

On July 29, 2001, William Troy Clark ("Clark") died in Vigo County jail as a result of symptoms related to alcohol withdrawal syndrome. At the time of his death, Clark was an unmarried adult with two noncustodial children, Lacee Clark, who then was nine years old, and Trey Clark, who was seven years old.

Prior to his death, Clark had worked as a union ironworker. In 1998, Clark began to drink alcohol excessively. He and his wife, Kimi, divorced on December 1, 1998. He was ordered to pay child support, but fell behind in the payments. In November 1999, Clark was diagnosed with alcohol dependency and bipolar personality disorder. In December 1999, the Vigo Superior Court issued an order directing Clark's employer to withhold a portion of Clark's income to pay his $7,900 child support arrearage.

In early 2000, Clark moved to Georgia to live with his mother. While in Georgia, he was convicted of possession of stolen goods and served a ten-month sentence in the George State Penitentiary. He was released in December 2000. While Clark was living in Georgia, he spoke with his children by telephone weekly.

2

On Father's Day weekend of 2001, Clark visited his children in Indiana. He returned to live in Indiana permanently approximately one month later, after he lost his job in Georgia. On July 23, 2001, Clark was arrested for failure to appear for a hearing in a case involving theft charges against him. While incarcerated in the Vigo County jail, Clark suffered from alcohol withdrawal syndrome, which went untreated and which ultimately led to his death on July 29, 2001.

The Estate brought a wrongful death claim against Vigo County and the Vigo County jail physician pursuant to the Indiana Medical Malpractice Act. The county settled the claim for $300,000, its maximum exposure under the Act. The jail physician settled the claim for $250,000, also the maximum exposure. In 2012, the Estate filed a petition to recover from the Fund the remainder of its damages pursuant to Indiana Code section 34-18-14-3(c). Prior to trial, the parties stipulated that the Estate had recovered the aggregate of $550,000 in the county and physician settlements.

The trial court held a bench trial on November 14, 2012, and issued its findings of fact and conclusions thereon on December 21, 2012. In its order, the trial court found that Clark paid child support in 2001 in the amount of $160 per week. The trial court found Clark's earning capacity at the time of his death to be $30,000 per year. The trial court concluded that Clark's estate should receive "excess damages in the amount of Four Hundred Sixty-Five Thousand Dollars ($465,000) to be paid by the Fund to the Claimant as excess damages[.]" Appellant's App. p. 33. In calculating the amount of liability, the trial court determined that the children were entitled to $309,000 in damages for the loss of Clark's "love, care, affection, companionship, and parental training for a period of

10.3 years . . . based on Mr. Clark's annual earnings at the time of his death[.]" Id. at 32. The trial court also awarded $6,089.85 for funeral expenses and $150,000 for the Estate's attorney's fees.

The Fund appealed the damage award, arguing that the trial court did not offset $550,000 already received by the Estate in settlements with other defendants. On appeal, another panel of this court held that the trial court's order was ambiguous because (1) it failed to specify whether the judgment accounted for a set-off for the settlements received by the Estate and (2) the trial court did not clarify what damages, if any, it awarded for Clark's lost earning capacity. In its opinion, this court observed:

> In its order, the trial court states that the children are entitled to $309,000, the estate's funeral expenses are $6,089.85, and the estate's attorney's fees are $150,000. Thus, the total liability of all defendants in this case would be $465,089.85. Once the trial court arrived at this figure, it should have then subtracted the amount the estate received from the defendants who settled. If the court determines that $465,089.85 is the total liability of all defendants, then subtracting the $550,000 settlement received by Clark's estate should result in no additional damages for the estate.
>
> However, the trial court's order also states that the "total allowable excess damages in this cause of action are $465,000." Similarly, conclusion of law seven states that the [Fund] "is responsible for up to an additional $700,000, in excess of the payments made by the underlying health care provider and the Vigo County jail . . . ." If the trial court intended to award $465,000 to Clark's estate, it should actually account for $1,015,000 in damages—the $465,000 damages plus the $550,000 settlement amount. Because the judgment enumerates only $465,089.85 in damages but specifically states that this amount is in excess of the settled amount, it is unclear whether the trial court actually offset the total damages by the amount received in the settlements with the Vigo County jail and the prison health-care provider.

Robertson ex rel. Indiana Patient's Comp. Fund v. Clark, No. 49A04-1212-CT-652, slip op. (Ind. Sept. 24, 2013). ("Clark I") (internal citations omitted).

4

This court therefore reversed the trial court's judgment and remanded with instructions to "calculate the total damages to which Clark's estate is entitled and to offset those damages by the amount received from the settling defendants." Id. The court further directed the trial court on remand to "determine whether Clark's estate is entitled to damages for Clark's lost-earning capacity." Id.

On remand, on December 20, 2013, the trial court calculated the value for the loss of Clark's earning capacity at $309,000 and the value of his love, care, affection, companionship, and parental training at $550,000. Its award of funeral expenses and attorney's fees remained the same, for a total judgment of $1,015,089.15. With the set-off for the Estate's settlements with the defendants, the excess damages payable by the Fund were $465,089.85.

The Fund, by Indiana Commissioner of Insurance Stephen Robertson, now appeals.

**Standard of Review**

The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We therefore apply a two-tiered standard of review: we first determine whether the evidence supports the trial court's findings, and, second, we determine whether the trial court's findings support the judgment. Anderson v. Ivy, 955 N.E.2d 795, 800 (Ind. Ct. App. 2011), trans. denied. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., if the record contains no facts or inferences supporting them. Redd v. Redd, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009). The party appealing the trial court's judgment must establish that the findings are clearly erroneous. Anderson, 955 N.E.2d at 800.

5

The trial court's findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. Id. In reviewing the trial court's findings, we neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Redd, 901 N.E.2d at 549. We do not, however, defer to the trial court's conclusions of law, which we review de novo. Anderson, 955 N.E.2d at 800; Redd, 901 N.E.2d at 549.

## I. The Trial Court's Authority on Remand

The Fund first argues that "the trial court exceeded its authority on remand by altering the amount awarded for lost love, care, affection, companionship and parental training, even though that element of damage was not reversed by the Court of Appeals." Appellant's Br. at 9. The Fund argues that principles of res judicata and the law of the case doctrine preclude the trial court from awarding damages as it did.

The limitation upon a trial court's jurisdiction after a remand is based upon the expectation that the trial court will do what it was requested to do by the appellate court. Skendzel v. Marshall, 263 Ind. 337, 330 N.E.2d 747, 749 (1975). An appellate court "retains" jurisdiction "to see that its instructions are carried out." Id.

The Fund contends that the trial court, on remand, made contradictory findings as to damages for the children's loss of Clark's love and affection and therefore acted outside of its authority on remand. We disagree. In Clark I, we held that the trial court's calculation and allocation of excess damages in its November 2012 order was unclear. We therefore remanded for clarification of the total amount of damages, including the set-off, and for clarification of the amount awarded for Clark's lost earnings. We

6

instructed the trial court on remand to do either of two things with respect to the setoff amount: (1) if it intended $465,000.00 to be the total liability of all defendants, subtract $550,000, the amount the Estate received in settlement, from its finding of damages, thereby resulting in no excess damages to be paid by the Fund, or (2) if it intended to award $465,000 to be awarded in excess damages, account for a total of $1,015,000 in damages and subtract the setoff amount.

The trial court complied with our instructions by identifying its award of $309,000 as damages for lost earning capacity and clarifying the amount of damages for loss of love and affection as $550,000, which, apparently, was the amount offset in the November 2012 order. Because the trial court simply followed our instructions on remand, the trial court did not exceed its jurisdiction in ruling on a post-judgment matter. See Stepp v. Duffy, 686 N.E.2d 148, 152 (Ind. Ct. App. 1997); see also Holmes v. Holmes, 726 N.E.2d 1276 (Ind. Ct. App. 2000) (holding that successor judge had authority on remand to make nunc pro tunc entry with respect to former husband's child support arrearage, where initial arrearage calculation was made without considering effect of Michigan order upwardly modifying former husband's support obligation, and would have resulted in former husband paying only 17 percent of amount actually owed).

The Fund's argument regarding principles of res judicata and the law of the case doctrine also have no merit. In Clark I, we expressly remanded with instructions for the trial court to determine the amount of excess damages and to determine lost earnings

damages. The trial court's compliance with these instructions is certainly not barred by res judicata or law of the case.[1]

## II. The Trial Court's Lost Earning Award

The Fund next argues that the trial court's award of lost earnings damages equaling Clark's full earning capacity was clearly erroneous. The Fund maintains that the award "should have been representative of the actual financial loss the Clark children would have received." Appellant's Br. at 15. Citing Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939, 943 (Ind. 2001), in which this court held that "the proper measure of damages must include a deduction based on the costs of this personal maintenance," the Fund claims that the "maximum award for the Clark children that could possibly be within the evidence is what they might have actually received in child support." Appellant's Br. at 15. The Fund claims that the evidence was insufficient to show that the Clark children could reasonably expect to receive *any* future support from Clark, in light of evidence of his alcoholism, incarcerations, and prior delinquencies in child support payment and that the trial court erred when it failed to adjust the amount of lost earnings damages to account for Clark's personal consumption.

---

[1] The principles of res judicata are divided into two branches: claim preclusion and issue preclusion, the latter also referred to as collateral estoppel. In re L.B., 889 N .E.2d 326, 333 (Ind. Ct. App. 2008). Collateral estoppel bars the subsequent re-litigation of the same fact or issue where the fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. Id. Law of the case provides that an appellate court's determination of a legal issue is binding on the trial court and in any subsequent appeal in the same case and on substantially the same facts. Dean V. Kruse Found., Inc. v. Gates, 973 N.E.2d 583, 590 (Ind.Ct.App.2012), trans. denied. Essentially, law of the case means all issues decided directly or by implication in a prior decision are binding in all further portions of the same case. Id. However, only those issues conclusively determined are considered law of the case, and the issue decided in the prior appeal must clearly be the only possible construction of an opinion. Id. Because the trial court acted in accordance with instructions from this court, none of these doctrines bar its judgment.

The Indiana wrongful death statute provides, in part:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

Ind. Code § 34-23-1-1. The statute provides for recovery by three different classes: (1) spouse or dependent children; (2) dependent next of kin; and (3) service providers, and further provides that damages shall be in such an amount as may be determined by the court, including, but not limited to, reasonable medical, hospital, funeral, and burial expenses, lost earnings, and the costs of bringing the wrongful death action, including attorney fees. Id. Only the first and second classes may recover damages resulting from lost earnings and from the non-pecuniary loss of love, care, and affection. Ed Wiersma Trucking Co. v. Pfaff, 643 N.E.2d 909, 911-13 (Ind. Ct. App. 1994), adopted on trans., 678 N.E.2d 110 (Ind. 1997).

In applying the wrongful death statute to compensate the deceased's beneficiaries for losses they suffer, the defendant should be permitted to present evidence of the deceased's personal consumption. If the trial court cannot deduct the deceased's personal

9

living expenses from lost earnings, the amount of the award will necessarily exceed the actual financial loss experienced by the beneficiaries. This result is not one contemplated by the statute. Therefore, the proper measure of damages must include a deduction based on the costs of this personal maintenance. Elmer Buchta Trucking, 744 N.E.2d at 943.

We note that the Fund has not presented a record that includes a transcript of the relevant proceedings. "It is a cardinal rule of appellate review that the appellant bears the burden of showing reversible error by the record, as all presumptions are in favor of the trial court's judgment." Marion-Adams School Corp. v. Boone, 840 N.E.2d 462, 468 (Ind. Ct. App. 2006). "The party claiming the error has the burden to establish a complete and accurate record." Smith v. Convenience Store Distributing Co., 583 N.E.2d 735, 739 (Ind. 1992).

"Although not fatal to the appeal, failure to include a transcript works a waiver of any specifications of error which depend upon the evidence." In re Walker, 665 N.E.2d 586, 588 (Ind. 1996) (citation omitted). See also Fields v. Conforti, 868 N.E.2d 507, 511 (Ind. Ct. App. 2007) (stating that our court may address issues on appeal that do not challenge the sufficiency of the trial court's findings of fact, but any arguments that depend upon the evidence presented at trial are waived). Here, the Fund's failure to provide this court with an adequate record precludes us from properly reviewing the Fund's claim that the trial court clearly erred in failing to consider evidence of Clark's personal consumption and in its finding of damages for lost earnings.

10

## III. Conclusion

For all of these reasons, we conclude that the trial court did not exceed its authority on remand. We further conclude that the trial court did not clearly err in its award of damages for lost earnings.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.