## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Matthew A. Griffith, Esq.
Griffith Law Group, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kent M. Frandsen
Travis W. Montgomery
Parr Richey Obremskey Frandsen & Patterson LLP
Lebanon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kansas City Services, Inc.,

*Appellant-Plaintiff,*

v.

Bryan Connan, individually, Julie Connan, individually, and Connan's Zionsville Investors, LLC,

*Appellees-Defendants*

November 19, 2015

Court of Appeals Case No. 06A04-1502-PL-66

Appeal from the Boone Superior Court

The Honorable Matthew C. Kincaid, Judge

Trial Court Cause No. 06D01-1310-PL-557

**Bailey, Judge.**

# Case Summary

Kansas City Services, Inc. ("KCS") appeals a judgment in favor of Bryan Connan, Julie Connan (collectively, "the Connans"), and Connan Zionsville Investors ("CZI"), upon KCS's complaint for breach of contract and equitable relief and CZI's counterclaim to quiet title. We affirm the denial of relief on the breach of contract claim; we reverse the denial of relief on the claim for equitable relief. We remand for a hearing on the appropriate amount of restitution.

# Issues

KCS presents four issues for review, which we consolidate and restate as the following two issues:

I.  Whether the trial court clearly erred in failing to find the existence of a contract for the sale of real estate between KCS and CZI; and

II.  Whether the trial court clearly erred by finding that KCS was not entitled to equitable relief with respect to four years of payments to CZI because those payments had been made to benefit a third party to the instant litigation.

# Facts and Procedural History

On January 29, 2002, the Connans and William Rabb ("Rabb") executed a land contract whereby Rabb agreed to pay the Connans $218,000.00 for real property located at 95 East Pine in Zionsville ("the Property"). Rabb tendered

a down payment of $10,000.00 and promised to make monthly payments of $1,383.83 for sixty months and a balloon payment thereafter.

[4] On April 1, 2007, the Connans and Rabb executed an Addendum to Purchase Agreement, changing the purchase price to $195,000.00 and the installment payments to $2,500.00. On January 30, 2008, the Connans quit-claimed their interest in the Property to CZI.

[5] In December of 2008, Rabb met with Bryan Connan and advised Connan that his father-in-law, John Petrowski ("Petrowski"), "would start making the payments for [Rabb]." (Tr. at 174.) Petrowski owns KCS, a real estate investment company.

[6] On February 6, 2009, Petrowski, as an authorized signer, issued a KCS check to CZI in the amount of $4,943.55. The Memo portion of the check reflected that the payment was "Dn Pmt. Bldg 95 E Pine, Zionsville, Ind 46077." (Pl. Ex. 5.) KCS began to make monthly payments of $2,500.00 to CZI.

[7] On May 22, 2009, Petrowski, on behalf of KCS, addressed a letter to Connan, on behalf of CZI, stating in part:

> I would like to formalize our agreement on the sale of this property to [KCS] from [CZI][.] . . . My records indicate that the agreed purchase price of the property is $170,443.43 after the February down payment of $4943.55 which paid all outstanding balances on the property through February, 2009. I also understand that we agreed that [KCS] would begin making monthly payments of $2,500.00 for a period of five years at a seven percent (7%) interest rate amortized over fifteen years.

> Upon completion of the sixty monthly payments in February 2014, a final payment of approximately $62,650 will be due to complete the sale.

(Pl. Ex. 7.)

[8] Approximately one month later, Connan sent a letter drafted on letterhead of Connan's Paint & Body Shop, LLC, responding in part:

> Please review and advise if it is agreeable. Per your May 22, 2009 letter, we agree to all points. Regarding property taxes, this year they are due June 30 and need to be paid to [CZI] as title is still held in CZI.

(Pl. Ex. 8.) Enclosed with the letter was an "Assignment of Land Contract" prepared by Connan's attorney. (Pl. Ex. 8.) The unsigned document recited that Rabb was to assign to KCS and to Petrowski, individually, his rights under the land contract with the Connans.[1] Rabb was to remain jointly liable with KCS and Petrowski. Petrowski, on behalf of KCS, responded by letter:

> I noticed on the legal description, that the property is assigned to Rabb and I want to be sure that Rabb will be removed and the assignment will be changed to Kansas City Services, Inc. as the only assignee when all the paperwork is complete.

(Pl. Ex. 9.)

---

[1] The parties agree that the attorney was unaware of the transfer from the Connans to CZI.

Connan, on behalf of CZI, wrote to Petrowski and enclosed a copy of a letter from Connan's attorney. The letter provided in pertinent part:

> I am not exactly sure what he means regarding his changes. Rabb is the original Purchaser and he will be doing the assignment to Kansas City Services, Inc. and John Petrowski, individually. This will be done with signatures by Rabb, Kansas City Services, Inc., John Petrowski and you and Julie, who have to approve the assignment. As to having Kansas City Services, Inc. only on the assignment, this is not in your best interests in that we don't know whether Kansas City Services, Inc. has been appropriately funded or is an entity to which we can look to in the event the contract is breached. The document is fine as I originally prepared it and should be executed by all parties with no further changes.

(Pl. Ex. 12.) Petrowski, on behalf of KCS, expressed "concern there might be a problem having clear title transferred from [CZI] to [KCS] without [Rabb's] name appearing on the title." (Pl. Ex. 13.) Connan forwarded to Petrowski a tax bill for the Property, but sent no revised assignment document. Sometime in 2009, Rabb obtained new employment and moved to California.

On March 24, 2009, Rabb executed a "Transfer of Rights and Interest," purportedly transferring to KCS all Rabb's contractual rights with respect to the Property. (Pl. Ex. 6.) On January 7, 2010, Petrowski wrote to Connan, stating

that he had enclosed a copy of the notarized transfer document. It was not acknowledged or signed by the Connans or a representative of CZI.[2]

[11] In 2011, the Property was damaged when a water pipe burst. In response to Petrowski's inquiry Connan advised:

> Now to address your concerns in your April 8th letter. The water has been off for over a year but Indianapolis Water will not discuss this with me as the account is in the name of Smart Dot/Bill Rabb. When a water bill is not paid, it is usually turned off at the shut-off valve out in the street. I, however, do not know the location of the shut-off for 95 Pine. I understand that the Zionsville Fire Department was called to turn off the water when someone observed water running out the door. The building is a total wreck. There is water standing, lights have fallen down, mold on the walls has grown to 6" circles. There is a hole in the back wall big enough to let animals in, gutters are down, etc. There is no way insurance is going to cover the damage after this amount of time. It would appear to me that the only options I have to protect my security is to demand payment in full or to petition the court for possession of the property.

(Pl. Ex. 31.) Petrowski proposed to Connan that Indiana Insurance Company "needs to be involved" and expressed willingness to join Connan in pursuing recovery from Indianapolis Water "legally to protect our financial interest in the building." (Pl. Ex. 32.) Connan received an insurance check in the amount of $15,000.00. No repairs were performed.

---

[2] Connan testified that he did not receive the document.

On June 28, 2011, KCS filed in the Boone County Recorder's Office an Equitable Interest Affidavit, asserting that KCS claimed an equitable interest in the Property. (Pl. Ex. 35.) Petrowski also authored some letters to Connan requesting a written agreement, an allocation of costs for water damage, and that KCS be permitted to take possession of the Property with the right to rent it to a third party.

In February of 2012, Petrowski wrote to Connan, enclosing photographs of the Property "when [KCS] agreed to purchase [it]" and expressing an "expectation" that the Property would be "in the same general condition prior to completing the purchase." (Pl. Ex. 43.) In April of 2013, Connan's bookkeeper addressed a letter to Petrowski, individually, demanding payment for delinquent taxes on the Property.

On October 25, 2013, KCS filed a complaint against the Connans and CZI for breach of contract, conversion, and unjust enrichment. On December 16, 2013, CZI counterclaimed for breach of contract and foreclosure against KCS. CZI also filed a complaint for foreclosure against Rabb. On October of 2014, CZI obtained a default judgment of foreclosure against Rabb.

On January 20, 2015, a bench trial was conducted with respect to KCS's claims and the defendants' counterclaims. KCS argued that a contract existed and it was entitled to specific performance or, alternatively, KCS was entitled to equitable relief or restitution of sums converted. CZI argued that no contract had been formed, KCS had made payments solely for the benefit of Petrowski's

son-in-law (and, indirectly, his daughter) and, lacking an expectation of other benefit, KCS was not entitled to equitable relief.

[16] On January 21, 2015, the trial court entered its findings of fact, conclusions of law, and judgment. In relevant part, the trial court determined that no contract for the sale of the Property had been formed. The trial court found that KCS was not entitled to recover on a theory of unjust enrichment because CZI had conferred a benefit of foregoing foreclosure upon Rabb for four years and Petrowski had hoped to preserve the Property for his children. CZI prevailed upon its counterclaim and was granted relief from the cloud on its title relative to KCS's equitable interest affidavit. In sum, CZI and the Connans retained possession of the Property with clear title, insurance proceeds, a judgment against Rabb, and all sums paid by KCS. KCS appeals.

# Discussion and Decision

## *Standard of Review*

[17] The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Such findings must disclose a valid basis for the legal result reached in the judgment, and the evidence presented must support each of the specific findings. *J.M. v. N.M.*, 844 N.E.2d 590, 599 (Ind. Ct. App. 2006), *trans. denied*.

[18] Upon review, we apply the following two-tiered standard: whether the evidence supports the findings and whether the findings support the judgment.

*Redd v. Redd*, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We do not reweigh the evidence, nor will we assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Id.*

## *Existence of a Contract*

[19] The existence of a contract is a question of law. *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006). The basic requirements are offer, acceptance, consideration, and "a meeting of the minds of the contracting parties." *Id.* Here, Connan urged that an assignment be executed by Rabb and approved by CZI with Petrowski and KCS as new joint obligors. Petrowski did not agree to personal liability and offered, on behalf of KCS, to purchase the Property for KCS. This division was never resolved and there was no "meeting of the minds" as to the identity of the purchaser. The trial court did not err in concluding that no new contract for the purchase of the Property was formed.

## *Equitable Relief*

[20] A claim for unjust enrichment is a "legal fiction" whereby a person who has been unjustly enriched at the expense of another is required to make restitution to the other. *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (citing *RESTATEMENT OF RESTITUTION* § 1 (1937)). To prevail on a

claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.

[21] The trial court recognized that KCS had conferred a measurable benefit upon CZI by making installment payments and paying real estate taxes. However, the trial court disagreed that CZI had been unjustly enriched:

> Under these circumstance[s], CZI did not have a reasonable expectation of having to pay the benefits – payment of contract installments and real estate taxes – back to KCS. CZI expected to have to convey the property to Rabb or his designee once the contract with Rabb was paid. CZI forebear [sic] foreclosure upon Rabb for four (4) years when it might have done so due to his default. CZI thus returned a benefit to Petrowski – that his children's interest in a property he hoped would be valuable for them would not be extinguished.

(App. at 19.) The trial court also made a factual finding that: "John Petrowski did not want his son-in-law and/or his daughter – particularly his daughter – to lose the value of the contract." (App. at 5.) Thus, the trial court was persuaded that Petrowski (individually) hoped to preserve property for his daughter and son-in-law.

[22] However, KCS – not Petrowski individually – made each payment to CZI. There is no evidence of record that any payment was made on behalf of Rabb. To the contrary, KCS while making payments demanded a contract naming KCS as purchaser and at times requested possession of the Property to install a tenant. Connan, while accepting payments on behalf of CZI, demanded an

assignment with Rabb relinquishing his rights and both KCS and Petrowski becoming liable to pay for the Property.[3] Under neither scenario was there an expressed intent to benefit Rabb, much less Rabb's wife who had not contracted with the Connans or CZI.

[23] Prior to the written communications between representatives of KCS and CZI, Rabb had expressed to Connan a belief or hope that payments would be made by Petrowski for Rabb. Rabb abandoned the Property, moved to California, and did not remain a part of sustained negotiations. For four years, Connan may have subjectively believed that there was an enforceable assignment. There was not. Petrowski may have subjectively believed that there was a valid contract for sale of the Property to KCS. There was not. However, regardless of individual expectations,[4] there is no evidence of record of a manifestation of intent by KCS (or Petrowski on behalf of KCS) that would support a factual finding that KCS made installment payments to purchase or preserve property for any entity other than KCS. KCS made four years of payments and received nothing in return.

---

[3] The Assignment of Land Contract prepared by Connan's attorney provided: "Purchaser [Rabb] hereby assigns any and all right, title and interest under the above Land Contract to Assignee, including but not limited to all rights, responsibilities and benefits accruing thereto. (Pl. Ex. 8.)

[4] Connan's bookkeeper also testified – not "for the truth of the matter" but to explain her bookkeeping entries – that she understood Petrowski could make payments on Rabb's behalf. (Tr. at 222.)

[24] The trial court's findings in this regard lack evidentiary support. As no valid findings support the judgment denying KCS equitable relief and allowing CZI to retain all monies paid, it must be reversed.

# Conclusion

[25] The trial court did not err in concluding that a contract for the purchase of the Property was not formed. However, the record leaves us with a firm conviction that the trial court erred by denying KCS restitution upon its claim of unjust enrichment.

[26] Affirmed in part; reversed in part, and remanded with instructions to conduct a hearing on restitution.

Mathias, J., and Brown, J., concur.