913 N.E.2d 1271 (2009)
D.B., Appellant-Petitioner,
v.
M.B.V., Appellee-Respondent.
No. 32A01-0903-CV-110.
Court of Appeals of Indiana.
October 2, 2009.
*1272 Monty K. Woolsey, Andrew R. Bloch, Cross, Woolsey & Glazier, Indianapolis, IN, Attorneys for Appellant.
William S. Ayres, Kelsey A. Vance, Ayres Carr & Sullivan, P.C., Indianapolis, IN, Attorneys for Appellee.

OPINION
BAILEY, Judge.

Case Summary
D.B. ("Father") appeals an order of the Hendricks Circuit Court terminating his parenting time with the children of his marriage to M.B.V. ("Mother") and requiring his payment of Mother's attorney's fees.[1] We affirm in part, reverse in part, and remand with instructions.

Issue
Father presents four issues for review, which we consolidate and restate as a single issue: whether the findings of fact, conclusions of law, and order are clearly erroneous in that they are contrary to statutory authority and lack evidentiary support.

Facts and Procedural History
The parties were married on July 24, 1982 and divorced on April 7, 2005. They had three children, C.B., born in 1985 (now married and emancipated), A.B., born in 1989, and L.B., born in 1993.
The matter of custody and parenting time was initially presented to the Hamilton County Superior Court, with each parent requesting custodial rights and Mother requesting that Father have only telephonic visitation. Dr. John Ehrmann was appointed to perform a custody evaluation. He recommended that Mother, who had been the primary in-home caretaker of the children while Father built his medical practice, have physical custody of the children. However, he expressed concerns that Mother sought to redress Father's marital infidelity by alienating the children from him, and that she saw Father's role as that of a provider rather than a co-parent.
In light of the recommendation, the parties agreed that Mother would have physical custody of the children. Initially, Father was to have parenting time each Sunday from 1:00 p.m. to 4:00 p.m., and the children began therapy with Dr. Richard Grana, with the goal of implementing increased parenting time. The Hamilton Superior Court appointed Bruce Pennamped to serve as the children's guardian ad litem. After interviewing Father and the children, Dr. Grana and Pennamped issued a joint recommendation to the trial court suggesting structured, *1273 monitored visits and periodic counseling sessions. It was reported that "progress has been minimal, primarily because [Father] has persisted in attempting to convince the girls that he has been victimized by their mother and the legal system." (Ex. D, pg.3). Dr. Grana and Pennamped expressed concern about Father's mental health, more specifically, his depression resulting from the extensive family problems.
Over the next few years, several mental health professionals provided, or attempted to provide, services to the family. Much like their predecessors, these mental health professionals were divided in their opinion as to whether the primary source of parenting time dysfunction was Father or Mother. Nevertheless, the interaction between Father and his children deteriorated rather than improved.
Parenting time eventually involved food throwing and name calling, with Father and the children accusing each other of being the instigator. The last two parenting time events ended with the children calling for police assistance and accusing Father of throwing one child into a movie theatre seat and using his hand to break the windshield of one child's vehicle. Father paid restitution through the Hendricks County Prosecutor's Office for broken windshield glass. No parenting time took place thereafter.
The parents also have had a significant history of cross-accusations of unlawful conduct. Father accused Mother of inflicting physical injuries upon him. Mother accused Father of stalking and invasion of privacy. In the most recent of these accusations, Father was arrested after Mother alleged that he peeked into her residential window. Subsequently, the charge was dismissed and Mother was charged with false informing.
The instant proceedings involve Father's October 6, 2006 petition for mid-week parenting time and his request for a contempt order against Mother, and Mother's motion (joined by the children) for orders restraining Father from contacting them. Upon Father's motion, jurisdiction was transferred to Hendricks County, the county in which both parents reside.
The Hendricks Circuit Court conducted hearings on February 19, 2008, June 19, 2008, and January 14, 2009. Dr. Ehrmann testified that he began working with the family several years previously, and had conducted a custody evaluation and reunification therapy. In his opinion, reunification between Father and his children was undermined by Mother's systematic alienation of the children from their father in order to redress Father's conduct during the marriage. Dr. Ehrmann testified to his observations of the children's aggression toward Father in that they would "bait, taunt, and insult" Father. (Tr. 66.) He expressed concern that unsupervised parenting time would subject Father to the risk of false accusations of abuse and possible arrests.
The guardian ad litem, Anne Fierek, testified that the children were fearful of Father, did not want parenting time with him, and should have their wishes considered because of their ages. In her opinion, the failures of several past attempts at therapy indicated the futility of future attempts, and the best interests of the children would be served by eliminating parenting time with Father.
The court-ordered visitation supervisor, Kay Culvert, testified that she accompanied Father and the children on visits from late 2005 through September of 2006. In her opinion, the children were initially reluctant to interact with Father, but matters greatly improved over the course of the visits. She did not feel that the children *1274 were ever at risk or that Father exhibited anger or inappropriate conduct toward them.
Finally, Father's mother testified that her relationship with the children was good prior to the divorce, but afterwards she had no relationship with them. She indicated that she had sent her grandchildren many cards and monetary gifts, with no acknowledgment from them.
The trial court followed the recommendation of the guardian ad litem that Father have no parenting time with the children. Father was ordered to abide by no-contact orders with regard to Mother and the children, and was also ordered to pay $14,000 of Mother's attorney's fees. Father now appeals.

Discussion and Decision

I. Standard of Review
The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Such findings must disclose a valid basis for the legal result reached in the judgment, and the evidence presented must support each of the specific findings. J.M. v. N.M., 844 N.E.2d 590, 599 (Ind.Ct.App.2006), trans. denied.
Upon review, we apply the following two-tiered standard: whether the evidence supports the findings and whether the findings support the judgment. Redd v. Redd, 901 N.E.2d 545, 549 (Ind.Ct.App. 2009). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. Id. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. Id. We do not reweigh the evidence, nor will we assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Id. We review conclusions of law de novo. Id. Finally, we generally give considerable deference to the trial court's findings in family law matters as the trial court is in the best position to become acquainted with the relationship between parents and their children. Id.

II. Analysis

A. Termination of Parenting Time
The issuance of no-contact orders effectively terminated Father's parenting time. Restriction or denial of parenting time is governed by Indiana Code Section 31-17-4-2, which provides as follows:
The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.
Indiana recognizes that the right of a noncustodial parent to visit his or her children is a "precious privilege." Duncan v. Duncan, 843 N.E.2d 966, 969 (Ind.Ct.App. 2006), trans. denied. Thus, although a court may modify a parenting time order when the modification would serve the best interests of the child or children, a parent's visitation rights shall not be restricted unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development. Id. (citing Ind.Code § 31-17-4-2). Even though the statute uses the word "might," this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. See Stewart v. Stewart, 521 N.E.2d 956, 960 n. *1275 3 (Ind.Ct.App.1988), trans. denied. A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction. Farrell v. Littell, 790 N.E.2d 612, 616 (Ind. Ct.App.2003).
In Farrell, a panel of this Court observed that a petition for parenting time restriction illustrates the tension between protecting children from heinous abuse and protecting innocent parents from the interruption and loss of parental rights. 790 N.E.2d at 616. We reversed an order suspending parenting time where molestation had been alleged, but no criminal charges had been filed and "the record would not have permitted a finding that [father's] visitation would endanger [child's] physical health or well-being or significantly impair [child's] emotional development." Id. at 617.
This Court has affirmed the suspension of visitation "at this time" where the father requesting visits had sexually molested another of his children, the abuse had been substantiated, the father had threatened the oldest child with a loaded gun, and he showed no remorse and refused counseling sessions. Duncan, 843 N.E.2d at 972. On the other hand, in K.B. v. S.B., 415 N.E.2d 749, 756 (Ind.Ct.App.1981), this Court observed that there was conflicting evidence of sexual abuse by fondling, or risk of reoccurrence, and affirmed the trial court's decision to permit parenting time.
Here, the trial court articulated no specific finding that parenting time would cause harm to the children. The record disclosing the past interaction between Father and his children does not approach the egregious circumstances in which we have previously found that parenting time may be terminated, such as when a parent sexually molests a child.[2] Clearly, our parenting time statute does not provide for the elimination of parenting time because reunification counseling has proved unusually challenging or because teenagers do not wish to interact with a parent while accepting substantial financial benefits from that parent.
However, while the complete termination of parenting time is not supported by the evidence, the record would support an order for supervised parenting time. Such an order would be appropriate given the volatile relationship between the parties, the ages of the children, and the concern of one therapist that supervision of parenting time would protect Father from unfounded accusations. On remand, should the trial court restrict Father's parenting time upon entry of the requisite statutory finding of endangerment, we encourage the trial court to order that the parenting time be supervised.

*1276 B. Attorneys Fees
Father argues that the trial court abused its discretion when it ordered him to pay $14,000 of Mother's attorney's fees. Pursuant to Indiana Code Section 31-16-11-1, a trial court has broad discretion to impose attorney's fees on either parent. Thompson v. Thompson, 868 N.E.2d 862, 870 (Ind.Ct.App.2007). We will reverse an order for the payment of attorney's fees only when the award is clearly against the logic and effect of the facts and circumstances before the court. Id.
The trial court may properly consider the respective resources of the parties, their financial earning abilities, and "any other factors that bear on the reasonableness of the award." Id. Moreover, the trial court may consider any misconduct on the part of a former spouse that necessitated additional legal expenses for the other party. Id.
Here, the trial court concluded that Father should pay the entirety of Mother's attorney's fees, which were substantially less than the fees Father claimed that he had incurred. In so doing, the trial court referenced the disparity of earnings and "the conduct that [Father] engaged in during the course of these proceedings." (App.59.) The trial court made a factual finding that Father "used the legal system to continue to disrupt his children and former wife." (App.58.) Given the sharp disparity of earnings, the protracted legal proceedings, and the relative modesty of Mother's legal fees as compared to Father's, we conclude that the trial court did not abuse its discretion by awarding Mother attorney's fees of $14,000.

Conclusion
The denial of parenting time is contrary to statutory authority. The trial court did not abuse its discretion by awarding Mother attorney's fees.
Affirmed in part, reversed in part, and remanded with instructions.
VAIDIK, J., and BRADFORD, J., concur.
NOTES
[1] Father does not request reversal of the no-contact order restraining him from contact with Mother.
[2] It appears that the trial court may have formed an opinion that Father suffers from an untreated mental illness. One finding in particular refers to Father's "elevated levels of paranoia, depression and psychopathology." (App.56.) This is an apparent reference to testing performed by Dr. Ehrmann. However, a review of Dr. Ehrmann's testimony belies the notion that Dr. Ehrmann actually diagnosed Father as mentally ill or believed that he posed a threat to the children. Dr. Ehrmann testified that, early in his contact with the family, he performed MMPI examinations of Mother and Father. In his evaluation of the test responses, Dr. Ehrmann found that Father had elevations from the mean in the afore-mentioned particular areas. However, Dr. Ehrmann specifically explained that the testing was limited in function. He offered his unequivocal opinion that the root cause of parenting time difficulties was parental alienation. More specifically, Dr. Ehrmann opined that Mother had "made significant efforts" to interfere with the Father/child relationships and "would do anything within her power to make certain that there would not be a relationship between father and the girls." (Tr. 54.)