**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**AMY O. CARSON**
Mitchell & Associates
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS J. LANTZ**
Montgomery, Elsner & Pardieck
Seymour, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL D. PERKINSON, JR., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 36A05-1106-DR-322 |
| | ) | |
| KAY CHAR PERKINSON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JACKSON SUPERIOR COURT
The Honorable Jon W. Webster, Special Judge
Cause No. 36D02-0803-DR-295

**January 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Michael D. Perkinson, Jr. ("Father"), appeals from the denial of a motion to correct error that challenged the trial court's order denying his verified petition for modification of parenting time and support, raising the sole issue of whether the trial court's decision has sufficient evidentiary support in the record.

We reverse and remand.

**Facts and Procedural History**

Father married Kay Char Perkinson ("Mother") in 2004. Mother became pregnant with their child, L.P., during the course of the marriage. In August 2005, Mother gave birth to L.P. Father filed a petition for dissolution of the marriage in September 2005, and Father exercised parenting time with L.P. during the pendency of the dissolution proceeding. Also during the course of the marriage, Father exercised parenting time with a child, A.,[1] from a prior relationship. Father yelled and intimidated A. when punishing her during these visits, attempted to use Mother to provide childcare for A. while Mother recuperated from delivering L.P., and displayed poor parenting skills in his care of both A. and L.P.

The dissolution decree, entered on February 21, 2006, distributed marital assets and debts between Father and Mother and required Father to make weekly support payments for L.P. Father was at that time experiencing financial distress and entered into an agreement with Mother in which he agreed to waive his rights to parenting time. In exchange for Father's waiver, Mother assumed sole financial responsibility for the portion of the marital

---

[1] No last name is provided in the record.

debts allocated to Father in the dissolution decree and would waive enforcement of Father's child support arrearage. The agreement also provided that if Father sought to obtain parenting time, "he shall be obligated to pay any support arrearage through the date of the approval" of the agreement by the trial court. (Appellant's App. 64.) The dissolution court approved the agreement on March 10, 2006.

On February 26, 2008, Father filed a verified petition for modification of parenting time, seeking to reestablish visitation with L.P. The trial court denied that petition on April 21, 2008. On December 13, 2010, Father filed a second verified petition for modification of parenting time. On March 7, 2011, a hearing was conducted on the petition, during which Father, Mother, and Father's new wife testified. The following day, the trial court entered findings and conclusions sua sponte, in which it found that if Father were to exercise parenting time rights with L.P., it would result in significant emotional harm to L.P. The court therefore denied his petition.

Father submitted a motion to correct error on March 28, 2011. On June 16, 2011, oral argument was conducted on the motion and the trial court denied Father's motion to correct error the same day.

This appeal followed. Additional facts will be provided as necessary.

**Discussion and Decision**

Father appeals from the trial court's denial of his motion to correct error, which itself challenged the trial court's denial of his petition for modification of parenting time, which the trial court entered in the form of findings and conclusions. We review a trial court's

3

decision on a motion to correct error for an abuse of discretion, reversing only where the trial

court's judgment is clearly against the logic and effect of the facts and circumstances before

it or where the trial court errs on a matter of law. Hawkins v. Cannon, 826 N.E.2d 658, 662

(Ind. Ct. App. 2005), trans. denied.

Our standard of review as to the underlying findings and conclusions is also well

settled:

> When the trial court enters findings sua sponte, the specific findings control
> only as to the issues they cover, while a general judgment standard applies to
> any issue upon which the court has not found. Brinkmann v. Brinkmann, 772
> N.E.2d 441, 444 (Ind. Ct. App. 2002). The specific findings will not be set
> aside unless they are clearly erroneous, and we will affirm the general
> judgment on any legal theory supported by the evidence. Hanson v. Spolnik,
> 685 N.E.2d 71, 76 (Ind. Ct. App. 1997), trans. denied. A finding is clearly
> erroneous when there are no facts or inferences drawn therefrom that support
> it. Id. at 76–77. In reviewing the trial court's findings, we neither reweigh the
> evidence nor judge the credibility of the witnesses. Id. at 77. Rather, we
> consider only the evidence and reasonable inferences drawn therefrom that
> support the findings. Id.

Julie C. v. Andrew C., 924 N.E.2d 1249, 1255-56 (Ind. Ct. App. 2010). We review the trial

court's legal conclusions de novo. Mansfield v. McShurley, 911 N.E.2d 581, 589 (Ind. Ct.

App. 2009).

Here, Father appeals the trial court's order, which declined to reinstate parenting time

after a prior order that wholly eliminated his parenting time. "In all visitation controversies,

courts are required to give foremost consideration to the best interests of the child." Marlow

v. Marlow, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), trans. denied. We review parenting

time decisions for an abuse of discretion. Id.

"Indiana has long recognized that the right[] of parents to visit their children is a

4

precious privilege that should be enjoyed by noncustodial parents," and thus a noncustodial parent is "generally entitled to reasonable visitation rights." Duncan v. Duncan, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006) (citing, inter alia, I.C. § 31-17-4-1), trans. denied. Indiana Code section 31-17-4-2 governs the modification and restriction of parenting time:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Ind. Code § 31-17-4-2. Although section 31-17-4-2 uses the phrase "might endanger," we have previously held the language to mean that a trial court "may not restrict parenting time unless that parenting time 'would' endanger" the child's health or emotional development. D.B. v. M.B.V., 913 N.E.2d 1271, 1274-75 (Ind. Ct. App. 2009), reh'g denied. A party seeking to restrict parenting time "bears the burden of presenting evidence justifying such a restriction." Id.

In D.B., we reviewed a trial court's decision that ordered a father to have no parenting time with his adolescent children and to comply with no-contact orders as to the children and their mother. Id. at 1274. In our opinion, we surveyed case law and observed that even in cases where a parent had been accused of abusing a child, parenting time was permissible where the evidence of abuse was conflicting or did not permit a finding that visitation would impair a child's physical health or emotional development. Id. at 1275 (citing Duncan, supra; Farrell v. Littell, 790 N.E.2d 612 (Ind. Ct. App. 2003); K.B. v. S.B., 415 N.E.2d 749 (Ind. Ct. App. 1981)). We therefore reversed the trial court's decision in D.B. and held, "the record

disclosing the past interaction between Father and his children does not approach the egregious circumstances in which we have previously found that parenting time may be terminated, such as when a parent sexually molests a child." Id. at 1275. We went on to state that supervised parenting time would be appropriate in light of the past volatility of the relationship between the father and his children. Id.

In the present case, Mother testified that Father had asked her to get an abortion upon learning of her pregnancy with L.P., a fact that Father conceded and which led to the dissolution of their marriage. Father displayed poor parenting skills during the marriage and the pendency of the divorce, including "yell[ing] and scream[ing]" at A., "verbally berating her," and being "very intimidating" toward her. (Tr. 56.) Mother testified that Father attempted to use Mother for childcare of A. while Mother was hospitalized and recuperating from L.P.'s birth, requested numerous times that she alleviate his child support and parenting time obligations, and failed to properly feed and care for L.P. when she was an infant. In 2006, Father agreed to forego parenting time in exchange for Mother's assumption of financial responsibility for that portion of the marital debt assigned to Father in the dissolution decree and her waiver of enforcement of his child support obligations. The trial court assigned very significant weight to that fact in reaching its decision, asking in a footnote, "How do you explain to a six (6) year old that her father exchanged time with her for money"?[2] (Appellant's App. 10.) Father has had no direct contact with L.P. since 2006, though he has sent packages of clothes to her and attempted to correspond with Mother about

___

[2] While we are uncertain that the agreement between Mother and Father would be enforceable of itself, we reach no conclusion on that issue, as we reverse the trial court's decision on other grounds.

reinstating parenting time.

In light of these facts, we find <u>D.B.</u> instructive. Father's conduct does not rise to the level of abuse we have previously held was necessary to effect the denial of parenting time, and thus there is insufficient evidence to support the trial court's finding that parenting time with Father will endanger L.P.'s physical health or significantly impair her emotional development. <u>Cf.</u> <u>D.B.</u>, 913 N.E.2d at 1275 (surveying this court's decisions affirming trial court orders eliminating parenting time on the basis of substantiated allegations of abuse, but reversing orders where allegations were unsubstantiated or where relationships between children and parents were under heavy strain). While Father's prior actions do not put his parenting skills and decision making in the best light, we cannot conclude that there was sufficient evidence that his conduct was so egregious as to warrant total elimination of his parenting time under section 31-17-4-2, particularly where Father's most worrying conduct occurred more than five years prior to the trial court's decision in this case.

We therefore reverse the trial court's denial of Father's motion to correct error and its underlying denial of his petition for modification of parenting time, and remand to the trial court for further proceedings.[3] To the extent there are questions with respect to Father's parenting skills or the emotional impact of a reunification upon L.P., we leave the question of supervision of visits and other such options to the discretion of the trial court.[4]

---

[3] We reach no conclusion on the merits of Father's written proposal for phased-in increases in parenting time, which he presented to the trial court.

[4] Father testified that he would be willing to engage in counseling to aid in this process.

Reversed and remanded.

BAKER, J., and DARDEN, J., concur.