## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 13 2015, 8:58 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Paul J. Podlejski<br>Anderson, Indiana | Cynthia P. Helfrich<br>Helfrich Law Offices<br>Brownsburg, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R.S.,<br>*Appellant-Respondent,*<br><br>v.<br><br>A.S.,<br>*Appellee-Petitioner* | April 13, 2015<br><br>Court of Appeals Case No.<br>48A04-1407-DR-322<br><br>Appeal from the Madison Circuit Court<br>The Honorable Thomas Newman, Jr., Judge<br>Cause No. 48C03-1109-DR-672 |

**Bailey, Judge.**

## Case Summary

[1]     R.S. ("Father") appeals a post-dissolution order denying Father's request for modification of child support payable to A.S. ("Mother"). Additionally, he

challenges the trial court's sua sponte suspension of his parenting time with Ga.S. and Gr.S. (collectively, "the Children"). We reverse.

# Issues

Father presents two issues for review:

Whether the trial court violated statutory authority when it suspended parenting time without a finding of endangerment to the Children; and

Whether the trial court abused its discretion in calculating child support.

# Facts and Procedural History

Mother and Father were divorced on May 24, 2012. The dissolution decree incorporated their agreement that Mother would have custody of the Children; Father would exercise parenting time according to Mother's wishes; Father would pay $225.00 weekly as child support; and the parents would share fifty-fifty the medical, clothing, and extra-curricular expenses of the Children.

On June 21, 2013, Father filed a Petition to Modify Support and to Establish Parenting Time. Mother filed a petition for contempt. On August 14, 2013, the trial court issued an interim order providing that Father was to exercise parenting time each weekend from the time he left work on Saturday until 6:00 p.m. on Sunday.

On December 5, 2013, the parties appeared for a hearing at which both parents and a child therapist testified. Father testified that he was the custodial parent of a teenager, he typically provided health insurance for all three of his children, he worked as a landscaper, and he had rental property and sold trees as a small side business. Mother testified that she was a dental hygienist who did "fill-in" work but was not then looking for work.[1] (Tr. 97.) She further testified that she lived with the Children, her fiancée, and his two children, aged six and ten. Mother expressed her opposition to Father having the Children for more than one night; she testified that Father had appeared to be under the influence of alcohol during some prior exchanges of the Children.

After the hearing, Mother successfully sought a change of judge. The hearing resumed on May 2, 2014, with the parties agreeing that the new trial court judge would also review the evidence presented on December 5, 2013.

On May 2, 2014, Mother testified. She testified that some of her concerns had been obviated and she assented to Father having Indiana Parenting Time Guideline-based parenting time, with certain requested deviations.[2] She expressed her belief that the agreed-upon child support did not deviate by more than 20% from a Guideline-based award. She offered that, if the trial court

---

[1] According to Father's testimony, Mother performs work at the office of her fiancée, a dentist. Mother did not corroborate or dispute the testimony that her fiancée was also her employer.

[2] Mother wanted Father to be ordered to transport the Children to extra-curricular activities during his parenting time, and to refrain from exercising extended parenting time in the summer if his landscaping work involved lengthy hours. She also requested an order that Father consume no alcohol or drugs during parenting time.

would leave the current child support award in place, she would pay the controlled expenses (such as clothing) for the Children and would pay the first 6% of their medical expenses. During Mother's testimony, the trial court made inquiries and ascertained that Father had not recently[3] completed a parenting class called Children in the Middle.

[8] At the conclusion of the testimony, the trial court announced:

> before we close the records I want to make a ruling. Because the father has not taken nor completed the Children in the Middle Program the Court suspends his visitation until he completes the Program two times, and further writes an essay which shall be presented to the court. In which should cover the following areas: behaviors that I was engaged in that were detrimental to the well being and proper development of the children and facilitating visitation; what changes I have made regarding my behavior and attitude towards my children and relationship with the children's mother. After the Court reads the essay from the father a hearing will be set to determine an appropriate visitation if any.

(Tr. 70-71.)[4] On June 20, 2014, the trial court issued its findings of fact, conclusions thereon, and order. The order provided that Father's parenting time was suspended "pending further hearing" and that Father's basic child support obligation would not be modified. At the same time, the trial court

---

[3] Father professed to have completed this program during his prior divorce; Mother testified that she and Father had not agreed that this was sufficient, and a current class was anticipated and appropriate.

[4] Father's counsel sought to clarify the order and the basis for repetition, to which the trial court responded: "Because I said so." (Tr. 71.)

adopted Mother's proposal that she pay controlled expenses and the first 6% of the Children's medical expenses. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[9]     When, as here, a trial court enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review for clear error; that is, first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1075-76 (Ind. Ct. App. 2011) (citations omitted), *trans. denied*. We do not reweigh the evidence, but consider the evidence favorable to the judgment. *Id.* Findings of fact are clearly erroneous when the record contains no facts to support them and a judgment is clearly erroneous if no evidence supports the findings, the findings fail to support the judgment, or if the trial court applies an incorrect legal standard. *Bowyer v. Ind. Dep't of Natural Res.*, 944 N.E.2d 972, 983-84 (Ind. Ct. App. 2011). Although we review findings under the clearly erroneous standard, we review conclusions of law de novo. *Id.* at 983.

## *Parenting Time*

[10]    Father sought Guideline-based parenting time, and Mother testified that she was in agreement with this, although she requested that the grant of such parenting time be accompanied by giving her a right of first refusal to care for

the Children[5] and by certain admonitions to Father. She requested that Father complete a class prescribed by a local rule, that is, Children in the Middle. The trial court sua sponte suspended Father's parenting time until he completed the class twice, presented a detailed essay to the trial court, and appeared at a future hearing. In so doing, the trial court ignored the wishes of the parents, penalized the Children and extended family members, contravened relevant statutory authority, and ignored Father's Constitutional rights.

[11] A parent has a constitutional right to raise his or her children. *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 371 (Ind. Ct. App. 2007). A non-custodial parent does not forfeit his or her right to parent; rather, the right of a non-custodial parent to spend time with his or her children is protected as a "precious privilege." *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*. "Ideally, a child should have a well-founded relationship with each parent." *Appolon v. Faught*, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003).

[12] Accordingly, the restriction or denial of parenting time is circumscribed by Indiana Code Section 31-17-4-2, which provides:

---

[5] The Indiana Parenting Time Guidelines impose a preference for parental childcare, such that a non-custodial parent is given the opportunity for additional parenting time when the custodial parent is regularly unavailable. *Shelton v. Shelton*, 835 N.E.2d 513, 517 (Ind. Ct. App. 2005). Mother observed that Father's work schedule could cause him to work very long hours in the summer, whereas she was available to parent. She also desired that the Children not be left for extended periods of time in the care of their paternal grandmother, who lives with Father and has Multiple Sclerosis. Accordingly, Mother wanted a right of first refusal akin to that granted a non-custodial parent.

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Although the statute uses the word "might," this Court has interpreted the language to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. *D.B. v. M.B.V.*, 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009). A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction. *Id.*

[13] Here, the trial court articulated no specific finding that parenting time would cause harm to the Children when issuing its sua sponte order. The trial court did not address the impact upon the Children of the abrupt and indefinite suspension of time with Father (and his household members, which included an older sibling and a grandmother suffering declining health due to Multiple Sclerosis). Although the trial court was quite upset with Father's reluctance to repeat the class he had apparently taken during his prior divorce, Father's history of interaction with the Children does not approach the egregious circumstances in which we have previously found that parenting time may be terminated, such as when a parent sexually molests a child. *See Duncan*, 843 N.E.2d at 972.

[14] Clearly, our parenting time statute does not provide for the elimination of parenting time because the trial court has decided "I say so." (Tr. 71.) We

reverse the parenting time suspension. We remand the matter to the trial court for an order of Guideline-based parenting time, as contemplated by the parents, and for consideration of the admonitions requested by Mother.

## *Child Support*

[15] Father argues that the trial court erred in determining that his child support should remain at $225.00 weekly. Specifically, he contends that the trial court abused its discretion by disregarding his financial obligation for his first-born child, disallowing a deduction for health insurance for the Children, and failing to impute greater-than minimum wage income to Mother.

[16] A trial court's calculation of child support under the Indiana Child Support Guidelines ("Guidelines") is presumptively valid and we will reverse a decision in child support matters only if it is an abuse of discretion, that is, when the trial court misinterprets the law or the decision is clearly against the logic and effect of the facts and circumstances that were before the court. *Sandlin v. Sandlin*, 972 N.E.2d 371, 375 (Ind. Ct. App. 2012).

[17] Pursuant to Indiana Code Section 31-16-8-1(b), a child support order may be modified:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[18] The trial court concluded that a 20% deviation had not been established. In so doing, the trial court apparently adopted Mother's Child Support Worksheet. Mother's worksheet assigned to her minimum wage income of $290.00 per week. The worksheet also assigned income to Father of $1,241.32 per week. As detailed on a separate exhibit, this consisted of Father's landscaping wages, unemployment income, farm rental income (with depreciation added back), gross residential rental income (although the mortgages exceeded the rental payments) and gross income from a tree-growing endeavor (with no corresponding deduction for expenses).[6]

[19] In addition to the implicit adoption of Mother's worksheet, the trial court articulated its unwillingness to give Father any credit for expenses of a prior-born child (despite Mother's concession that Father in fact had sole custody of his teenaged child) or any credit for payment of health insurance (although both Mother and Father acknowledged Father's responsibility for health insurance premiums and he had requested an extremely modest deduction of $17.00 per week from his gross income). The child support order essentially left the prior

---

[6] Trail courts are vested with discretion to determine which business expenses are deductible for calculating the child support obligation of self-employed parents, but the court must engage in a careful review of the facts and circumstances present. *Young v. Young*, 891 N.E.2d 1045, 1049 (Ind. 2008). Although the adjusted gross income from a party's tax return is "a useful point of reference," the trial court must evaluate the specific deductions taken to arrive at that figure. *Id.* In considering depreciation, the trial court has broad discretion, but "should have as a goal … to measure a reasonable yearly deduction for necessary capital expenditures." *Glass v. Oeder*, 716 N.E.2d 413, 417 (Ind. 1999).

parental agreement on child support in place, with modifications proposed by Mother. Because the order is not compliant with the directives or objectives of the Child Support Guidelines, we conclude that it represents an abuse of the trial court's discretion.

[20] Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. *Sandlin*, 972 N.E.2d at 374. The Guidelines apportion the cost of supporting children between the parents in accordance with their means, based upon the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *Id.*

[21] The Children have an older sibling, and that older sibling has special needs. Had Mother's and Father's marriage remained intact, the amount of income available to the younger two siblings would be impacted by the needs of their elder sibling. Indeed, the Guidelines specifically recognize the propriety of an adjustment for a legal duty of support for a prior-born child. This is reflected on Line 1C of the Worksheet. Guideline 3(C)(3) provides that "an amount reasonably necessary for such support *shall* be deducted from Weekly Gross Income to arrive at weekly adjusted income." (emphasis added.) It is "recommended" that the Guidelines be used to compute such support. Commentary to Guideline 3C. Father was entitled to an adjustment from his gross income because of his legal duty to support his prior-born child.

[22] The Guidelines also provide for a worksheet adjustment for the weekly cost of health insurance premiums. Guideline 3(G)(3) provides that "[t]he parent who pays the weekly premium cost for the child(ren)'s health insurance *should* receive a credit towards his or her child support obligation in most circumstances." (emphasis added.) As the trial court observed, Father's pay stubs did not reflect a deduction for health insurance premiums. However, the health insurance was union-provided and not employer-provided. It was available to Father after he worked a requisite number of hours, and the premium was calculated as a portion of his income rather than a fixed amount. After apportioning a share of the premium to his eldest son, Father requested a very modest deduction of $17.00 per week for two children. Mother agreed that Father had paid health insurance premiums, albeit sporadically. It would appear that, on remand, Father is entitled to at least some allowance for the payment of health insurance premiums.

[23] The Guidelines advocate a total income approach to calculating weekly gross income. *Ratliff v. Ratliff*, 804 N.E.2d 237, 245 (Ind. Ct. App. 2004). "Weekly gross income" is defined as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits. Ind. Child Supp. G.3(A). A trial court may impute income to a parent for purposes of calculating child support upon determining that he or she is voluntarily unemployed or underemployed. *Sandlin*, 972 N.E.2d at 375. Father contends that the trial court should have imputed income greater than minimum wage to Mother.

Mother is a dental hygienist. As of the hearing date, she was employed on an as-needed or call-in basis, apparently by her fiancée. She was not seeking full-time work. The youngest of the four children in the household, who is also Father's child, was not scheduled to attend kindergarten for several more months, and it was anticipated that he might require surgery for a club foot.

Mother did not specify her current hourly wage, but testified that she had previously made $32.00 per hour. Mother has a greater earnings potential as a dental hygienist than does Father, a landscaper. However, according to Mother's testimony, she and Father had an understanding "during the marriage" that Mother would be a homemaker. (Tr. 24.) There is no reason to believe that any such agreement was indefinite. On remand, the trial court should consider whether Mother is voluntarily underemployed.

# Conclusion

We reverse the suspension of parenting time and remand for a calculation of child support consistent with the Guidelines.

Reversed and remanded.

Riley, J., and Barnes, J., concur.